NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220170-U

NO. 4-22-0170

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.R. and J.A., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 20JA59 |
| v. | ) | |
| Scott R., | ) | Honorable |
| | ) | J. Brian Goldrick, |
| Respondent-Appellant). | ) | Judge Presiding. |

---

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the judgment of the trial court terminating respondent's parental rights because the trial court's best interest finding was not against the manifest weight of the evidence.

¶ 2   Respondent, Scott R., is the father of J.R. (born July 2009) and J.A. (born May 2011). In September 2021, the trial court found respondent was an unfit parent under the Adoption Act, and in January 2022, it found termination of respondent's parental rights would be in J.R.'s and J.A.'s (the minor children) best interests.

¶ 3   Respondent appeals, arguing that the trial court's best-interest determination was against the manifest weight of the evidence. We disagree and affirm.

¶ 4                                   I. BACKGROUND

¶ 5                                   A. Procedural History

¶ 6   In May 2020, the State filed a petition for adjudication of wardship that alleged

that J.R. and J.A. were neglected in that they lived in an environment that was injurious to their welfare while in the care of their mother, Kayla L., due to her "unresolved issues" of domestic violence, anger management, and substance abuse. See 705 ILCS 405/2-3(1)(b) (West 2020). The State also alleged that the minors' environment was injurious to their welfare when in the care of respondent due to his "unresolved issues of domestic violence and/or anger management." *Id.*

¶ 7        On the same day the petition was filed, the trial court conducted a shelter care hearing and placed temporary guardianship and custody of J.R. and J.A. with the guardianship administrator of the Illinois Department of Children and Family Services (DCFS).

¶ 8        In August 2020, the trial court conducted an adjudicatory hearing. Kayla L. stipulated to the allegation that she had unresolved issues of alcohol/substance abuse, and the court adjudicated J.R. and J.A. neglected minors.

¶ 9        In October 2020, the trial court conducted a dispositional hearing at which it entered a written order making J.R. and J.A. wards of the court. It also found respondent unfit and unable for reasons other than financial circumstances alone to care for, protect, train, educate, supervise, or discipline the minor. The court also found that it would be contrary to the children's health, safety, and best interests to be in respondent's custody and placed guardianship and custody of the children with the guardianship administrator of DCFS.

¶ 10                      B. The Termination Proceedings

¶ 11        In July 2021, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was an unfit parent within the meaning of the Adoption Act due to his failure to (1) "maintain a reasonable degree of interest, concern, or responsibility as to the minor[s'] welfare," (2) "make reasonable efforts to correct the conditions that were the basis for

the removal of the child[ren] from the parent," and (3) "make reasonable progress toward the return of the child[ren] to the parent." See 750 ILCS 50/1(D)(b), (m)(i), (m)(ii) (West 2020).

¶ 12                                    1. *Parental Fitness*

¶ 13        In September 2021, the trial court conducted a hearing on the parental fitness portion of the termination proceedings. Respondent stipulated to the allegation in the State's petition that he failed to make reasonable progress toward the return of the children to him from November 2020 to August 2021. As part of the factual basis for the stipulation, the State informed the court that during that period respondent did not attend substance abuse treatment or the domestic violence program and he did not attend all scheduled visits with his children. The court entered a written order finding respondent unfit under section 1(D)(m)(ii) of the Adoption Act. 750 ILCS 50/1(D)(m)(i) (West 2020).

¶ 14                                    2. *Best Interests*

¶ 15        In January 2022, the trial court conducted a hearing on the issue of whether terminating respondent's parental rights was in J.R.'s and J.A.'s best interest.

¶ 16        Amber Cowdery testified that she had been the foster mother of J.R. and J.A. since August 2020. She had two biological children and worked at a car dealership. Cowdery testified that the children transitioned well into her family and bonded with her and her biological children. She testified that she loved the children, wanted what was best for them, and believed it was in their best interest to remain with her and terminate respondent's parental rights. If Cowdery was given the opportunity, she would adopt the children.

¶ 17        Respondent testified he was the biological father of the children. When the case began, he was engaging in services but stopped within three months because he became unemployed and he "got into alcohol really bad." Eventually, he decided to address his alcohol

issue and entered treatment. Following his discharge from the treatment facility, he maintained sobriety but admittedly had a few relapses, for example, when his father passed away. Respondent last consumed alcohol in January 2022, the same month as the best interest hearing. He also testified that prior to the filing of the petition, he visited his children every other weekend while they were living with Kayla L.

¶ 18 Respondent testified that he had recently begun working full time "through a temporary service." Regarding completion of services, respondent stated that he had trouble "getting the hours," and he had missed a few classes due to catching COVID-19. However, he was willing to complete the services. On cross-examination, respondent acknowledged that he did not attend Alcoholics Anonymous to aid in his sobriety.

¶ 19 Natasha Bever testified that she was the caseworker for DCFS in charge of the children's cases. She testified that there had been several periods during which respondent failed to engage in services but acknowledged he had recently been engaged and cooperative. On cross-examination, Bever testified that at the beginning of the case, respondent had visits with J.R. and J.A. for two hours once a week but because of respondent's missing visits, the visits were suspended until he could show consistent improvement in his services and sobriety. Respondent was also given the opportunity to call the children on the phone once a week, but he was similarly inconsistent and missed scheduled calls. The missed calls and visits had a negative impact on the children, and they were fearful of going to respondent's house because of his drinking. However, Bever stated that because respondent had recently engaged in services, phone visits were reinstated but respondent was able only to make it to one of the two scheduled appointments.

¶ 20 J.A. and J.R. wrote letters for the trial court's consideration. J.A. wrote that he

wanted to stay in Cowdery's home and was excited about the prospect of adoption. J.A. specifically stated that he would not feel safe in respondent's care. J.R. also wanted to remain in Cowdery's care and would be "happy" if she adopted him. J.R. desired to visit with respondent but only "if he continues to keep himself healthy and doesn't drink."

¶ 21                                    3. *The Trial Court's Ruling*

¶ 22            The trial court found termination of respondent's parental rights to be in J.R.'s and J.A.'s best interests. The court stated it had considered all the statutory "best interest" factors (see 705 ILCS 405/1-3(4.05) (West 2020)) and discussed the ones it found particularly relevant. The court noted that Cowdery had been meeting the children's physical and material needs since August 2020. Additionally, although respondent had a hand in developing the children's identity, Cowdery "is the one who [was] helping the children navigate their circumstances and learn to be children so to speak." The court explained that the children viewed adoption favorably and felt attachment, love, safety, and security with Cowdery. Finally, the court believed that "[h]aving resolution, letting these children know where they're going to be, where they're going to s[t]ay, I think is vitally important for them. Given their ages [(10 and 12)] and their understanding of what's going on, I think it's extremely important."

¶ 23            This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25            Respondent appeals, arguing that the trial court's best-interest determination was against the manifest weight of the evidence. We disagree and affirm.

¶ 26                        A. The Applicable Law and Standard of Review

¶ 27            At the best-interest stage of termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best

interest. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71, 145 N.E.3d 605. In reaching a best-interest determination, the trial court must consider, within the context of the child's age and developmental needs, the following factors:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." (Internal quotation marks omitted.) *In re J.B.*, 2019 IL App (4th) 190537, ¶ 32, 147 N.E.3d 953.

See also 705 ILCS 405/1-3(4.05) (West 2020).

¶ 28        A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility. *C.P.*, 2019 IL App (4th) 190420, ¶ 71. An appellate court "will not disturb the trial court's decision regarding a child's best interests *** unless it is against the manifest weight of the evidence." *Id.* ¶ 68. A best-interest determination is against the manifest weight of the evidence only when the opposite conclusion is clearly the proper result. *Id.*

¶ 29                                B. This Case

¶ 30        Respondent argues that the trial court placed (1) too much weight on the children's sense of permanence and stability and (2) too little weight on "a potential relationship

- 6 -

with their biological father, as well as the relationship with extended family."

¶ 31        Respondent contends that his progressing "through the steps needed for the return of J.A. and J.R. mitigates the importance of a permanent parental solution such as adoption." He further asserts that, although his prior time with the children was limited to weekends, "many fathers, including him, were able to create a caring and devoted relationship with their children during those days together." He argues the children need a father figure as they grow.

¶ 32        We conclude the trial court's finding that termination was in J.R.'s and J.A.'s best interest was well supported by the record. The children had been in Cowdery's care for over a year and were thriving. Respondent's substance abuse and missed visits and calls had a negative effect on the children. Also, respondent was not participating in Alcoholics Anonymous to help maintain his sobriety long term and even drank alcohol the same month as the best-interest hearing. Cowdery had provided a loving home, and the children looked forward to the prospect of adoption. J.R. and J.A. had bonded with Cowdery's biological children, and Cowdery was determined to provide permanency through adoption if the children became available. Given the unique circumstance of the case—specifically, the age of the children—the court's emphasis on the children's sense of permeance and stability was entirely appropriate, and we affirm its judgment terminating respondent's parental rights.

¶ 33                              III. CONCLUSION

¶ 34        For the reasons stated, we affirm the trial court's judgment.

¶ 35        Affirmed.